Defendants moved in this case to prevent plaintiff's oral argument due to plaintiff's failure to file a brief along with her Form 44. As oral argument was waived in the case, the issue becomes MOOT and need not be addressed. Plaintiff has submitted a Form 44, and these matters shall be considered on the appeal.
The undersigned have reviewed the Award based upon the record of the proceedings before the Deputy Commissioner.
The appealing party has shown good grounds to reconsider the evidence. Upon reconsideration of the evidence, the undersigned are of the opinion that the Deputy Commissioner erred in his findings that plaintiff's claim for additional compensation should be denied. Neither party here requested the Full Commission to receive further evidence or to rehear the parties or their representatives. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate order. Accordingly, the Opinion and Award of January 25, 1994 is HEREBY VACATED, and the undersigned proceed to make their own Findings of Fact, Conclusions of Law, and ultimate Award.
The Full Commission find as fact and conclude as matters of law the following, which were entered into by the parties as
STIPULATIONS
1. That all parties are properly before the Industrial Commission, are subject to and bound by the provisions of the Workers' Compensation Act, that the [Industrial] Commission has jurisdiction over the parties and of the subject matter, that the employer-employee relationship existed at the time of plaintiff's injury, and that the carrier is Amerisure.
2. All parties have been correctly designated.
3. None of the parties in this action are appearing in a representative capacity.
4. There are no third party defendants or cross claimants at this time.
5. The plaintiff sustained an injury by accident on October 29, 1991, when she fell while in defendants' employ.
6. The plaintiff's average weekly wage at the time of the injury was $255.71, which yields a workers' compensation rate of $170.48.
7. Pursuant to a Form 21, Agreement for Compensation for Disability, dated January 20, 1992, and approved by the [Industrial] Commission on February 14, 1992, defendants have compensated plaintiff from October 31, 1991 through and including November 3, 1991, from November 5, 1991 through and including November 19, 1991 and from November 22, 1991 through the present. Defendants are continuing payment of compensation to the plaintiff at the rate of $170.48 per week at this time.
8. Additionally, the parties have stipulated into evidence a Form 24, Application of Employer or Insurance Carrier to Stop Payment of Compensation, with attachments, which was denied by the Industrial Commission on May 26, 1993, and a series of medical and rehabilitation records consisting of 337 pages.
EVIDENTIARY RULINGS
1. Plaintiff's objections to evidence pertaining to matters prior to defendants' February 1993 filing of the Form 24, are HEREBY OVERRULED.
2. Plaintiff's objections to Hinson's Investigations reports dated November 7, 1992, May 21, 1993, and July 2, 1993 and to defendants' Exhibits 3 and 4, are HEREBY OVERRULED.
* * * * * * * * * * * * *
Based upon the competent and convincing evidence adduced at the hearing, the undersigned make the following additional
FINDINGS OF FACT
1. Plaintiff is a thirty-seven-year-old female who completed the ninth grade and attained a GED. She has taken three courses in child care at a technical school. Plaintiff reads and writes without difficulty.
2. On October 29, 1991, plaintiff was employed as a child care instructor with defendant employer, and had been so employed since June 16, 1988. Plaintiff's job duties consisted of providing child care to seven children between the ages of six weeks and two years old. Plaintiff's prior employments consist of working as a nanny, a housekeeper, a dietary cook in a nursing home, and a restaurant cook.
3. As a result of her October 29, 1991 injury by accident, plaintiff underwent a L5-S1 right hemilaminectomy and microdiskectomy on November 21, 1991.
4. On March 24, 1992, plaintiff reached the end of the healing period from her injury. Plaintiff was released to return to work with restrictions of lifting and carrying ten to fifteen pounds, pushing and pulling twenty to twenty-five pounds, and sitting no more than thirty minutes at a time.
5. As a result of her injury, plaintiff sustained a fifteen percent permanent partial disability to the back.
6. Upon her release to return to work, defendant employer did not provide a job for plaintiff within her work restrictions.
7. On June 18, 1992, plaintiff began working with American Rehabilitation, Inc., which had been employed by Amerisure to provide vocational job placement services to plaintiff.
8. In June, 1992, plaintiff without the knowledge of the defendant employer, carrier, or American Rehabilitation, Inc., began a business enterprise with her mother and a third co-owner. The business enterprise was a bar called "Spices". "Spices" opened for business in August of 1992 and closed permanently in May 1993. Plaintiff worked at getting the business operational and thereafter worked in the ongoing operation of the business. Plaintiff's testimony to the contrary is not accepted as credible or convincing to the undersigned.
9. Plaintiff worked with the American Rehabilitation, Inc. vocational coordinator from June of 1992 until March of 1993. During this period of time, plaintiff was unable to obtain employment with her restrictions.
10. In February 1992, plaintiff was shot during an altercation with a customer at "Spices".
11. In March of 1993, plaintiff underwent a functional capacity evaluation. Plaintiff put forth less than a full effort during the evaluation. Additionally, in March of 1993, the vocational coordinator located a potential job for plaintiff as a Wake County School bus driver, which was within plaintiff's work restrictions. Plaintiff, after several attempts, did not pass the CDL portion of the licensing test and thus could not be hired as a bus driver.
12. In April 1993, the vocational coordinator located a job as a security guard for plaintiff. The vocational coordinator attempted to contact the plaintiff on several occasions. However, plaintiff was unavailable from April 20, 1993 until May 5, 1993, during which time the security guard job was filled by someone else. There is no convincing evidence that plaintiff deliberately sought to avoid this possible job or be unavailable during this period of time. Further, there is no convincing indication that plaintiff would have actually been hired for this job.
13. In July 1993, vocational job placement efforts were suspended by the carrier.
14. There is insufficient convincing evidence in the record from which it can be determined by its greater weight that plaintiff earned any wages or income from "Spices".
15. Although plaintiff worked in her own business enterprise from June 1992 until May 1993, which demonstrates that she had the capacity to perform some work at the end of the healing period, her business enterprise was not a regular employment by which it could be determined that plaintiff's disability ended.
16. Although plaintiff retained some capacity to work at the end of the healing period, she has been unable to obtain, through reasonable efforts on her own and with the assistance of a vocational coordinator, employment from the end of the healing period and continuing for an indefinite period of time.
17. Plaintiff's disability did not end on May 5, 1993, and there is no convincing or credible evidence to the contrary. Plaintiff's unavailability for approximately 15 days leading up to May 5, 1993, is, at worst, a failure to cooperate with rehabilitation efforts which could have led to the temporary suspension of benefits until such refusal ceased. However, in the case at hand, there is insufficient convincing evidence of record that plaintiff did refuse to cooperate with rehab. Instead, the undersigned find that plaintiff remains willing to cooperate with any rehabilitation efforts initiated by defendants.
Based upon the foregoing stipulations and findings of fact, the undersigned make the following
CONCLUSIONS OF LAW
1. On October 29, 1991, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant employer. As a result of her injury, plaintiff was temporarily totally disabled from October 31, 1992 through November 3, 1991, from November 5, 1991, through November 19, 1991, and from November 22, 1991 to March 24, 1992, at which time, plaintiff reached maximum medical improvement. Plaintiff is entitled to temporary total disability compensation at the rate of $170.48 per week for the aforementioned period.
2. Plaintiff retained some capacity to work at the end of the healing period, but she has been unable to obtain, through reasonable efforts, employment as of the date of the initial hearing. Plaintiff is entitled to additional temporary total disability compensation beginning March 24, 1992, and continuing until plaintiff returns to work or until further order of the Industrial Commission.
3. Plaintiff is entitled to further vocational rehabilitation efforts to be provided by defendants. Plaintiff must cooperate with these rehabilitation efforts or risk suspension of her temporary total disability benefits by order of the Industrial Commission due to failure to cooperate.
4. Plaintiff is entitled to such future medical services as may be necessary to effect a cure, give relief, and lessen her period of disability.
5. Plaintiff's counsel is entitled to a reasonable attorney's fee.
* * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the undersigned make the following
AWARD
1. Defendants shall pay plaintiff temporary total disability compensation at the rate of $170.48 per week for the following periods: October 31, 1991, through November 3, 1991; from November 5, 1991, through November 19, 1991, and from November 22, 1991, to March 24, 1992, at which time plaintiff reached maximum medical improvement. By stipulation, it has been indicated that these amounts have already been paid.
2. Defendants shall pay plaintiff additional temporary total disability compensation at the rate of $170.48 per week beginning March 24, 1992, and continuing until plaintiff returns to work or until further order of the Industrial Commission. Such amounts as have accrued shall be paid to plaintiff in a lump sum, subject to the attorney's fee provided in Paragraph 5.
3. Defendants shall provide further vocational rehabilitation efforts for plaintiff, and plaintiff is ORDERED herein to cooperate with such efforts or face suspension of her temporary total disability benefits during her period of refusal.
4. Defendants shall provide plaintiff with such medical services as may be necessary to effect a cure, give relief, or lessen her period of disability.
5. Plaintiff's counsel is entitled to have a reasonable attorney's fee of twenty-five percent (25%) of the accrued compensation paid directly to counsel and thereafter is entitled to have every fourth check of temporary total disability compensation forwarded directly to counsel.
6. Defendants shall pay the costs.
This case is ordered REMOVED from the Full Commission hearing docket.
This the __________ day of _____________________, 1995.
 S/ _____________________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/ ____________________ CHARLES A. CLAY DEPUTY COMMISSIONER
S/ ____________________ J. HAROLD DAVIS DEPUTY COMMISSIONER
JHB/nwm 01/23/95